# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

SAMUEL HENDRICK ARTISTE,    )
                            )
Plaintiff,                  )
                            )        **Case No.:**
                            )      *15-61788-CV-COHN/SELTZER*
v.                          )
                            )
                            )
BROWARD COLLEGE,            )
                            )
Defendant                   )
                            )

_____

## AMENDED COMPLAINT

## NATURE OF THE ACTION

1) Plaintiff, Samuel Hendrick Artiste, has brought this action against BROWARD COLLEGE, FLORIDA ("BC"/DEFENDANT) seeking injunctive, declaratory, and other reasonable relief as well as compensatory and punitive damages, based on Defendant's continuing deprivation of his civil rights as defined under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, 42 USC Sec. 1981, 1983, and 1988 alleging discrimination based on race, national origin, and retaliation.

2) Plaintiff alleges that Broward College has a well-known pattern and practice of racial discrimination against its employees and, in some instances, against its own students. Additionally, the Human Resources & Equity and Employee Relations Departments have, for the most part, intentionally condone discriminatory conducts of its Deans, Associate Deans, and other high-ranked "Exempt" administrators.

## JURISDICTION AND VENUE

3) This Court has federal question jurisdiction over this action as Title VII claims pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331 and 1343(a).

4) Venue is proper in the Southern District of Florida because the Defendant resides and conduct business in Broward County and the actions alleged by Plaintiff occurred at Defendant's South Campus, located in Broward County, Florida.

5) Plaintiff also resides in Broward County, Florida.

6) Plaintiff, SAMUEL HENDRICK ARTISTE, has fulfilled all conditions precedent to the institution of this action and has obtained Notices of Right to Sue from the Equal Employment Opportunity Commission ("EEOC") in May 2015, assigned Charge Number 510-2015-02952.

7) All conditions precedent to the institution of this action have been satisfied.

## PARTIES

### I. PLAINTIFF

8) Plaintiff, SAMUEL HENDRICK ARTISTE, is a black male citizen of Haiti, a resident of Broward County, Florida, and a former Curriculum Support Specialist at Broward College's South Campus.
9) Plaintiff was employed by the Defendant from 1991 until April 1st, 2015.
10) Plaintiff is an employee as defined by Title VII of the Civil Rights Act of 1964, as amended.

### II. DEFENDANT

11) BROWAD COLLEGE is a four-year college as defined by Fla. Stat, §1000.21 that receives Federal financial assistance and is subject to Title VII of the Civil Rights Act of 1964, as amended.
12) Defendant is a member of EEOC and an employer that is subject to Title VII of the Civil Rights Act of 1964, as amended.

### FACTUAL ALLEGATIONS

13) Paragraphs one (1) through twelve (12) above are incorporated herein by reference.
14) Plaintiff brings this action on his own behalf.
15) Plaintiff was employed by the Defendant from 1991 until April 1st, 2015 where he had worked respectively as Work Study student, Clerical Part-Time worker, Foreign Language Tutor, Part-Time International Advisor, ESL and Foreign Language Adjunct, and Curriculum Support Specialist.
16) Over the years, the Plaintiff has been subject to abuses, prejudices, and mistreatments by his supervisor Dean Teresa Justice just like other co-workers such as, Kathy Clavier, Chris Dada, and Bradley Thompson.
17) On June 24, 2013 the Plaintiff sent an email Dean Justice, copied to Dr. Madison (South Campus President and Mrs. Diane Stachurski (Human Resources) about abuses, prejudices, and mistreatments toward him and all the EAP/MFL Lab staff that he used to oversee.
18) These prejudices become even more obvious all throughout Dean Justice's last evaluation (2012-2013) before her retirement. A closer look reveals that Dean Justice had failed to

answer consistently and accurately to most of the areas that she had to evaluate and her reticence to acknowledge the Plaintiff's achievement as a form of retaliation and a desperate last attempt to tarnish his image.

19) As a result the Plaintiff was placed under a Performance Improvement Plan for the first time in twenty years as a Full-Time Curriculum Support Specialist.

20) The Plaintiff had requested that a thorough probe be done before signing the Performance Improvement Plan (PIP). However, the new Associate Dean, Mr. Dave Ferreira, had revised it by taking out most of the biased recommendations and urged him to complete the rest.

21) Plaintiff had completed the PIP before the recommended time and was reevaluated by AD Ferreira as Above Standard.

22) Few months later, another college wide evaluation rated the Plaintiff as Above Standard was recommended for Pay for Performance for the first time in 20 years in spite of his prior achievements as stated in his Goal Accomplishment Document submitted to Dean Justice and Human Resources from 2006 to 2012.

23) The then new Associate Dean Mr. David Ferreira, was a witness of a false accusation that Dean Justice brought forth right after her introducing him to him. That accusation was about a Posttest that she claimed to have four to five complaints from students and teachers on her desk on July 29, 2013. The irony was that he had not yet made the test available to students as he was waiting for it to be reviewed by an ESL faculty. At the end of his statement that he had not opened the Posttest yet, she ordered him to make it available ASAP by the time she got to her office. That was an awkward moment for him, as it was his very first few minutes meeting the new Associate Dean.

24) Dean Justice had given a white female employee, Mrs. Margaret Latimer, all the opportunities to rearrange her schedule per day, per week, and per weekend to accommodate her children, but questioned, revised, and sometimes rejected most of Plaintiff's requests to accommodate his.

25) Dean Justice had let a white English Adjunct male employee and a Curriculum Support Specialist, Mr. Chris Pulsifer, leave work to go teaching just two hours after clocking in (10:00 a.m.) and other time in the afternoon during his working schedule in the Learning Resources Lab, but had never granted the Plaintiff the same opportunity. In some instances, she even challenged the Plaintiff's schedules and stipends as an Adjunct outside of her department.

26) The Plaintiff had been asked by Dean Justice to produce reports without the necessary tools. Although the Department had the necessary software (MYELT) to give and produce topic and skill tests, Dean Justice had declined authorizing Plaintiff using it for the lab. She had requested that he do everything manually with limited staff. He had to prepare, give, and grade tests manually for about 450 students at 16 topics per class. Mrs. Tatiana, his only Lab Assistant was diagnosed with Carpal Tunnel Syndrome and the Plaintiff with Trigger Finger due repetitive paper test grading. At the end of summer 2013, Mrs. Tiatian Martinez was out sick on compensation leave with Carpal Tunnel Syndrome due to tedious paper test grading in the lab.

27) In the history of the LRC - South, the Plaintiff was the only Lab Coordinator who wrote two grants to help students in the lab that he used to oversee. The first one was through Title V funding for tutoring and small group sessions, where many students from multiple ESL classes had obtained the necessary individual help that they needed to successfully pass their courses.

The second one was in collaboration with Professor Darenda Borgers. In spite of that accomplishment, Dean Justice called the Payroll Department not to release the Plaintiff's stipend on that grant for the ESL Lab. Professor Darenda got paid, but Dean Justice blocked his stipend. Upon his request for her to release the money, as he told her that he needed it to feed his children, her answer was the following: "That's why I have a dog, not children" and she added "What if you were in Haiti?"

28) In a prior incident during the Plaintiff's first years on South Campus, Dean Justice asked two maintenance/cleaning employees to stop cleaning the cubicles prior to installing new computers in the EAP/MFL Lab that the Plaintiff used to oversee. She asked them to leave and ordered the Plaintiff to do it. As he refused to do it stating that he was not hired for that, she asked him to leave and ordered her new secretary, Mrs. Bernadine Anderson, to finish the job.

29) The Plaintiff had been denied continuing teaching as an adjunct by South Campus administration on several occasions just because he vehemently denounced a mistake by the ESL department of promoting a student to the next level without passing the lower level.

30) In a meeting with the ESL department with (Dr. Jose Macia, Professor Yanick Daniel, Professor Andrea Apa, and Professor Osmond Duffis), Dean Justice wanted the Plaintiff to show support in favor of using a particular book in opposition to Professor Daniel's choice. Once he declined to do so, she yelled out that she wanted to stop the meeting to see him in her office. She proceeded to do so in spite of the intervention of those who were present.

31) On January 17, 2014, the Plaintiff filed a Discrimination and Retaliation Complaint against Dean Terri Justice with the Department of Human Resources and Equity for discriminatory employment practices. Up until now, nothing has been done by HR to address his concerns. The Plaintiff had been getting evasive answers from Ms. Tessa Lovell until she decided to refer the case to her supervisor, Dr. Edshall, who sent an email asking him to wait.

32) Since then, the Human Resources Department has ignored the Plaintiff's discrimination complaint against Terri Justice. On July 28, 2015, he simply received an email from Mr. Anthony Carrabis stating that a letter about the case "was forwarded to his Home of Record on June 16, 2014".

33) On March 21st, 2014, the Plaintiff answered to an email sent by Ms. Tessa Lovell where she mentioned that "the named respondent is no longer a Broward College employee and is not obligated to respond to an investigation and that they were unable to contact Dean Justice" The Plaintiff forwarded an email from Nerlaine Thomas, nthomas2@broward.edu, sent out to BC about the Annual "Women's History Panel and

Luncheon" on North Campus to be held on March 24, 2014 at 12:30PM-1:30PM, Building 46 Room 152 where Ms. Teresa Justice will be a "featured panelist".

34) On a Friday afternoon, at about 5:30, the Plaintiff met with Ms. Tessa Lovell from Human Resources in his office, building 72/Rm 250. During that meeting Ms. Lovell tried to talk him out of pursuing his complaint. Since he adamantly declined to do so, next, he received an email from her that she had referred the case to her supervisor, Dr. Denise Edshall.

35) Later in early 2015, the Plaintiff was informed by another employee that a subordinate was stating that he had a crush on her. He proceeded to have a conversation via a conference call with the employee and the subordinate to clear the confusion. He informed the subordinate that he was in no way interested in her. The subordinate reported the incident to Associate Dean Ferreira who had placed the Plaintiff on administrative leave with pay effective February 16, 2015, pending an investigation. The Plaintiff received a full pay for the month of February. However, he only received a fraction of his pay on March 13, 2015. He was terminated in lieu of resignation on March 31st, 2015.

36) The Plaintiff received an email from Mr. Anthony Carrabis where the allegations were found to be unsubstantiated, however, the Plaintiff was separated from the College for using the college computer to print out a quit-claim deed and list, which was considered as using the college computer for personal use.

37) On the contrary, a Haitian male EAP Adjunct Professor from the English Department on South Campus, reported to the Plaintiff that he was "patted down" in the English Department lounge room by a Tenure ESL Faculty on South campus. After telling the Plaintiff that he had inflexibly confronted the alleged individual about his move, the Plaintiff advised the alleged victim to report the incident to his supervisor, Dr. Jose Macia, and/or the administrators on South Campus, Dr. Sean Madison (South Campus President) and Dr. Winston Thomson (Dean of Academic Affairs). The alleged victim discussed the incident with Professor Yanick Daniel and the Department secretary, Ms. Latarsha Dykes who, in turn, advised him to do the same. Unfortunately, he came back a week later to tell the Plaintiff that he contacted the South Campus administrators about the incident and that nothing had been done about it. The next smart move of the administration was to offer the victim a Temporary Full-Time ESL position in order to silence him down.

38) The Plaintiff was never given a reason for not receiving his full pay for the month of March. He received a letter from the college's retirement plan indicating that on March 16, 2015, a contribution was made into his account. This coupled with his minimum salary (March 2015) prior to the investigation conducted by the College and his termination date.

39) According to texts that the Plaintiff received from AD Ferreira and letter and emails from Human Resources, the College is still in contradiction as of who and which department made the decision of the separation.

40) In either case, the decision to terminate the Plaintiff's employment reflects the remnants of support for Terri Justice and that they had capitalized on one incident to show gratitude and support.

41) Associate Dean Ferreira himself had pledged his support to Terri during a meeting with the Plaintiff, Dean Justice, and him before signing the final 2013-2014 evaluation.

42) In a meeting where all the coordinators (Mr. Chris Pulsifer, Mr. Chris Dada, Mr. Adrian Igoni, Mr. Mario Belgrave, Ms. Syncia Barreto, and Mr. Sandra Gans) were present, AD Ferreira promised that he will tear down the EAP/MFL Lab sign from the Plaintiff's door if he continues to hassle him in support of the rights of ESL students and staff.

43) This reaction comes from an email that the Plaintiff sent him not to remove about 15 ESL students from the lab in order to give a reading orientation.

44) He even ignored the Plaintiff's verbal report to him that one of his lab assistant, Mr. Mostafa Hossain was insulted by an ESL Adjunct during an orientation presentation of "having bad smell" and "not being able to speak proper English".

45) AD Ferreira had created himself an elite group of two white females whom he had been taken to Outback in Pembroke Pines almost every Friday after work.

46) Ms. Tessa Lovell and Dr. Denise Edsall never conducted a thorough investigation including and not limited to phone calls, interviews, meetings, emails or any electronic correspondence, visits, mails, and any other procedural tools necessary for the investigation about the Plaintiff's discrimination complaint against Terri Justice.

47) The Human Resources department has even attempted to cover up and not to rectify the Plaintiff's years of service with the college. The College has reported 19.5 years instead of 22 years of service.

48) Plaintiff feels that he was not given due process in either case: the allegations against him and his discrimination complaint against Terri Justice.


## ALLEGATIONS OF DISCRIMINATION AND RETALIATION

49) Defendant Broward College has engaged in, and continues to engage in, a systemic pattern and practice of racial discrimination against the Plaintiff.

50) Broward College has discriminated against the Plaintiff by failing to monitor and oversee employment and human resources practices and failing to ensure that Broward College's policies are applied reliably and in an unbiased manner.

51) Personnel at the highest levels of Broward College are aware of the discrimination against the Plaintiff, but did little or nothing to help.

52) Broward College failed to fully and effectively investigate complaints of discrimination and harassment made by the Plaintiff against supervisors and Deans.

53) Broward College's failure allowed the discriminatory motives and biases of its employees.

54) Broward College's practices and procedures for handling complaints of discrimination do not adequately ensure that complaints are investigated fairly, that prompt remedial action is taken in response to discrimination.

55) Broward College fails to provide sufficient monitoring, oversight, or accountability to ensure that employees are treated in a nondiscriminatory manner in terms of compensation, evaluations, promotions, and other conditions of employment.

## COUNT I

### DISCRIMINATION AGAINST THE NAMED PLAINTIFF IN VIOLATION OF TITLE VII

56) Paragraphs 1 - 55 above are incorporated herein by reference.

57) Plaintiff repeats and re-alleges each and every allegation above as if set forth herein in full.

58) Plaintiff is subjected to discrimination and retaliation on the basis of his race by Defendant, Broward College in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e.

59) The Plaintiff has been deprived of the opportunity of working in an environment free of racial discrimination and the opportunity to be supervised and work with persons who would not have discriminated against him.

60) The unlawful actions of the Defendant as set forth above constitutes a practice, pattern and custom or policy of the Defendant for allowing acts of racial discrimination and/or retaliation in violation of its employees' federally protected rights.

61) The actions of the Defendant violate Title VII.

62) As a result of the actions of the Defendant, the Plaintiff has been and continue to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering, and monetary and economic losses.

WHEREFORE, Plaintiff demands judgment against the Defendant and asks for the following relief:

    a. A declaratory judgment that the Defendant's employment practices challenged herein are illegal and in violation of Title VII; and

    b. Award Plaintiff back pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory and retaliatory conduct;

    c. Preliminarily and permanently restraining Defendant from engaging in the aforementioned conduct; and

    d. Awarding Plaintiff front pay in lieu of reinstatement; and

    e. Award of nominal, compensatory, and punitive damages for all legal relief sought in this complaint; and

    f. Award reasonable attorneys' fees and costs incurred in this action under and

    g. Order any other relief this Court deems to be just and appropriate.

# COUNT II

## DISCRIMINATION TITLE VII

## RETALIATION

63) Paragraphs 1 - 55 above are incorporated herein by reference.

64) Plaintiff repeats and re-allege each and every allegation above as if set forth herein in full.

65) As set out in detail above, in retaliation for the Plaintiff good faith opposition to the racial discrimination, the Defendant has retaliated against him.

66) The Defendant's conduct was retaliation based, at least in part, on the Plaintiff' protected activities of opposing racial discrimination.

67) As a result of the actions of the Defendant, the Plaintiff has been injured and has suffered damages.

WHEREFORE, Plaintiff demands judgment against the Defendant and asks for the following relief:

   a. A declaratory judgment that the Defendant's employment practices challenged herein are illegal and in violation of Title VII; and

   b. Award Plaintiff back pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory and retaliatory conduct;

   c. Preliminarily and permanently restraining Defendant from engaging in the aforementioned conduct; and

   d. Awarding Plaintiff front pay in lieu of reinstatement; and

   e. Award of nominal, compensatory, and punitive damages for all legal relief sought in this complaint; and

   f. Award reasonable attorneys' fees and costs incurred in this action under and

   g. Order any other relief this Court deems to be just and appropriate.

# COUNT III

## Claims of Race Discrimination and Retaliation in Violation of 42 USC 1981

68) Paragraphs 1 - 55 above are incorporated herein by reference.

69) Plaintiff repeats and re-alleges each and every allegation above as if set forth herein in full.

70) As set forth in detail above, the Defendant intentionally and maliciously discriminated against the Plaintiff in the terms, conditions and benefit of his employment, including termination, at least, in part, on the basis of his race.

71) Plaintiff was retaliated against and terminated (constructive or directly) at least in part for complaining of racism.

72) The Defendant failed to adequately promulgate, disseminate, and enforce a racial harassment and/or discrimination policy with regard to the Plaintiff.

73) The Defendant condoned and/or otherwise ratified the unlawful, racially discriminatory action against the Plaintiff.

74) The Defendant thus, as outlined above, has violated the proscriptions against race discrimination and retaliation under 42 USC Sec. 1981.

75) The Plaintiff has suffered damages as a proximate result of these violations, which were caused by Defendant's policy or custom and/or a failure to adequately train caused by deliberate indifference to the Plaintiff's federally protected rights and/or by deliberate indifference to those violations.

76) The unlawful conduct of the Defendant, as described above, constitutes a custom or policy of the Defendant for allowing acts of racial harassment, racial discrimination and/or retaliation in violation of its employees' federally protected rights.

77) The Defendant engaged in the practices complained of herein with malice and/or with reckless indifference to the Plaintiff's federally protected rights.

78) As the result of Defendant's conduct, the Plaintiff was deprived of income and other benefits due to him. The Plaintiff also suffered embarrassment, emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation. The unwelcome racial harassment, discrimination and retaliation created an intimidating, oppressive, hostile and offensive work environment that interfered with the Plaintiff's emotional and physical well-being and his ability to do his work.

79) The Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, injunctive relief, compensatory and punitive damages and a declaratory judgment is his only means of securing adequate relief.

80) The Plaintiff is now suffering and will continue to suffer irreparable injury from the Defendant' unlawful conduct as set forth herein unless enjoined by this Court.

WHEREFORE, the Plaintiff demands judgment against the Defendant and asks for the following relief:

    a. A declaratory judgment that the Defendant's employment practices challenged herein are illegal and in violation of 42 USC Sec. 1981

    b. Awarding Plaintiff back pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory and retaliatory conduct;

    c. Preliminarily and permanently restraining Defendant from engaging in the aforementioned conduct; and

    d. Awarding Plaintiff front pay in lieu of reinstatement; and

    e. Award of nominal, compensatory, and punitive damages for all legal relief sought in this complaint;

    f. Awarding reasonable attorneys' fees and costs incurred in this action;

    g. Ordering any other relief this Court deems to be just and appropriate.

# COUNT IV

## RACIAL DISCRIMINATION VIOLATION OF

## FLORIDA CIVIL RIGHTS ACT OF 1992

### FLA. STAT. 760.01 et. seq.

81) Paragraphs 1 - 54 above are incorporated herein by reference.
82) The Plaintiff is covered employee under the FCRA.
83) The Defendant constructively discharged, discharged and/or otherwise discriminated against the Plaintiffs with respect to his terms, conditions, and privileges of employment because of his race, national origin, and color.
84) The Defendant deprived the Plaintiff of employment opportunities or otherwise adversely affected his status as employee because of his race, national origin, and color.
85) As a result the Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment against the Defendant and asks for the following relief:
    a.  A declaratory judgment that the Defendant's employment practices challenged herein are illegal and in violation of the Florida Civil Right Act.
    b.  Awarding the Plaintiff back pay, prejudgment interest, and damages for all employment benefits they would have received but for the discriminatory and retaliatory conduct;
    c.  Preliminarily and permanently restraining Defendant from engaging in the aforementioned conduct; and
    d.  Awarding the Plaintiff front pay in lieu of reinstatement; and
    e.  Award of nominal, compensatory and punitive damages for all legal relief sought in this complaint;
    f.  Awarding reasonable attorneys' fees and costs incurred in this action;
    g.  Ordering any other relief this Court deems to be just and appropriate.

## COUNT V - RETALIATION
## VIOLATION OF FLORIDA CIVIL RIGHTS ACT
## FLA. STAT 760. et.seq.

86) Paragraphs 1 - 54 above are incorporated herein by reference.
87) The Defendant retaliated against the Plaintiff because he opposed the unlawful discriminatory employment practices.
88) As a result of these actions the Plaintiff has suffered damages.

WHEREFORE, the Plaintiff demands judgment against the Defendant and asks for the following relief:
    a.  A declaratory judgment that the Defendant engaged in, and continues to engage in, a pattern or practice of discrimination against employees and students.
    b.  Preliminarily and permanently restraining Defendant from engaging in the aforementioned conduct; and

c. Awarding the Plaintiff's incidental monetary relief in the form of back pay, prejudgment interest, damages for all employment benefits, front pay in lieu of reinstatement; and

d. Award of nominal, compensatory and punitive damages incidental

e. Awarding reasonable attorneys' fees and costs incurred in this action;

f. Ordering any other relief this Court deems to be just and appropriate.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a trial by jury for all issues so triable.

Respectfully filed this 8th, day of September, 2015 by:

**Samuel Hendrick Artiste**
**9510 Atlantic Street**
**Miramar, FL 33025**